In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 22-3194

CHICAGO JOE'S TEA ROOM, LLC
and PERVIS CONWAY, individually,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF BROADVIEW,
an Illinois Municipal Corporation, et al.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:07-cv-02680 — **Matthew F. Kennelly**, *Judge*.

———————————

ARGUED SEPTEMBER 14, 2023 — DECIDED FEBRUARY 26, 2024

———————————

Before ROVNER, HAMILTON, and BRENNAN, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal presents a host of issues arising from an effort to prove lost profits for a business that never opened. In 2006, plaintiff Chicago Joe's Tea Room, LLC hoped to open an adult entertainment business in a Chicago suburb, the Village of Broadview. Chicago Joe's encountered legal obstacles that it claimed violated its constitutional

rights. For over fifteen years, Chicago Joe's has been seeking tens of millions of dollars in lost profits for that hypothetical business.

The district court excluded most of Chicago Joe's evidence and theories for lost-profits damages. The exclusions were based on a number of substantive and procedural problems with the evidence Chicago Joe's offered. The court eventually entered a final judgment awarding Chicago Joe's just $15,111 in damages. Chicago Joe's has appealed.

We affirm. All issues in this appeal challenge decisions that are left to the sound discretion of the district court, and we find no abuses of discretion. Along the way, we address limits on using lay opinions to prove lost profits for a business that never opened, limits on the testimony that a rebuttal expert can offer, exclusion of late or undisclosed evidence as a discovery sanction, and denial of leave to amend a complaint eleven years after the case was filed.

I.  *Factual and Procedural Background*

   A.  *Special Use Permit Denial, Constitutional Challenges, and a New Illinois Statute*

We begin with a brief outline of more than fifteen years of litigation, providing more issue-specific details later. Chicago Joe's Tea Room intended to open not a tearoom but a strip club and restaurant in the Village of Broadview in Cook County, Illinois, west of Chicago. The proposed club planned to feature semi-nude dancing and to serve alcohol.

In 2006, David Donahue contracted to buy land in the Village from plaintiff Pervis Conway with the goal of opening Chicago Joe's at that location. Donahue then assigned the land contract to Chicago Joe's, LLC, of which Donahue became the

sole member in 2010. The land was zoned industrial, and in December 2006, Chicago Joe's applied for a special use permit. In early 2007, the application was denied. Chicago Joe's had made clear that it intended to serve alcohol, but a Village ordinance prohibited adult entertainment businesses from selling alcohol. Shortly after that denial, the Village amended its adult business ordinance to prohibit such businesses within 1,000 feet of any residential area. Under that restriction, Chicago Joe's would not have been able to open at the proposed site even if it could resolve other issues.

On May 11, 2007, Chicago Joe's and Conway filed this lawsuit against the Village of Broadview, members of the Zoning Board, and members of the Village Board. The complaint sought a variety of relief, including (1) a declaratory judgment that both the special use ordinance and the alcohol prohibition ordinance violated the First Amendment; (2) an injunction against enforcement of the ordinances against Chicago Joe's; and (3) monetary damages for the unconstitutional denial of the special use permit.

In September 2008, Judge Gottschall granted and denied in part cross-motions for summary judgment. Judge Gottschall found that the alcohol ban was unconstitutional. *Chicago Joe's Tea Room, LLC v. Village of Broadview*, No. 07-cv-2680, 2008 WL 4287002, at *19 (N.D. Ill. Sept. 11, 2008). Judge Gottschall also found that Chicago Joe's had acquired a "vested right" under Illinois law to proceed under the adult-business ordinance as it existed at the time it applied for the special use permit. *Id.* at *6.

In the meantime, though, the State of Illinois had changed its laws regarding adult businesses. On August 16, 2007, about three months after this suit was filed, the Illinois legislature

amended 65 Ill. Comp. Stat. Ann. 5/11-5-1.5 in a way that
made it impossible for Chicago Joe's to open anywhere in the
Village:

> [I]t is [ ] prohibited to locate, construct, or oper-
> ate a new adult entertainment facility within
> one mile of the property boundaries of any
> school, day care center, cemetery, public park,
> forest preserve, public housing, or place of reli-
> gious worship located in that area of Cook
> County outside of the City of Chicago.

The one-mile limit put the entire Village off limits for a new
adult entertainment business like Chicago Joe's.

B. *Discovery and Damages Evidence*

In June 2012, the case was transferred to then-District
Judge Lee, who oversaw discovery, which closed in early 2015
after several extensions. Chicago Joe's did not identify an ex-
pert witness for damages. It chose instead to rely on David
Donahue to offer lay opinions about lost profits, the lion's
share of the damages it sought. The Village took Donahue's
deposition on three separate occasions: July 25, 2013; March
7, 2014; and March 11, 2014, including as a Rule 30(b)(6) des-
ignated witness. The depositions examined Donahue's calcu-
lations of Chicago Joe's lost profits based upon his experience
with a different adult entertainment business called Polekatz.

The Village responded by disclosing the expert report of
Gary R. Skoog, Ph.D., dated July 14, 2014. His report chal-
lenged the lost-profits calculations of Donahue, offering its
own conclusions and opinions of Chicago Joe's financial
losses. On October 3, 2014, Chicago Joe's disclosed the rebut-
tal expert damages report of John Bradley Sargent.

Over six years later, in January 2021, Sargent provided a "supplemental" report. That report provided two new, independent calculations: (1) the actual costs incurred by Chicago Joe's; and (2) the projected lost profits of Chicago Joe's from 2007 to 2026. ECF 1074-6 at 7.[1] These values were original calculations by Sargent, based on new financial information and documents from Polekatz and Chicago Joe's. *Id.* at 5.

C. *The Village's Motion for Reconsideration and Appeal*

In 2016, the parties engaged in another round of summary judgment briefing. The Village asked Judge Lee to reconsider Judge Gottschall's prior vested-rights holding. Judge Lee held that the 2007 Illinois amendment to the adult business law defeated Chicago Joe's claim that it had a vested right to proceed under prior law. Judge Lee granted partial summary judgment for the Village and dismissed Chicago Joe's claims for declaratory and injunctive relief, leaving only the damages claim. *Chicago Joe's Tea Room, LLC v. Village of Broadview*, No. 07-cv-2680, 2016 WL 1270398, at *5–7 (N.D. Ill. Mar. 31, 2016). Chicago Joe's appealed that decision, and we affirmed on June 29, 2018. *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 810 (7th Cir. 2018) ("*Chicago Joe's I*").

The parties and the district court then focused on preparing for a trial on damages. In 2018, Chicago Joe's also moved for leave to file an amended complaint to add a challenge to the constitutionality of the state's 2007 amendment to the adult business law. Judge Lee denied the motion as untimely and prejudicial to the Village.

---

[1] All references to documents in the district court record are denoted "ECF."

D. *Discovery Sanctions and the Final Stipulated Judgment*

As trial approached, the Village filed a series of motions in limine seeking to exclude virtually all of Chicago Joe's evidence of lost profits, as well as other categories of damages evidence, on both substantive grounds and as sanctions for failure to make timely and proper disclosures during discovery. In August 2022, Judge Lee granted all the relief the Village sought.

Upon Judge Lee's appointment to the Seventh Circuit Court of Appeals, this case was reassigned to Judge Kennelly on September 8, 2022. Chicago Joe's filed a motion for reconsideration of Judge Lee's evidentiary rulings. Judge Kennelly denied the motion and encouraged the parties to work out an efficient process for resolving the case. The parties agreed to a stipulated judgment of $15,111 in damages—essentially just out-of-pocket expenses—that would preserve Chicago Joe's right to appeal the district court decisions that had limited so significantly the available damages evidence.

On appeal, Chicago Joe's challenges the following decisions of the district court:

(1) the exclusion of David Donahue's lost-profits damages testimony and supporting evidence, as well as his opinion that Chicago Joe's could have opened before the 2007 statutory amendment if the Village had granted the special use permit earlier that year;

(2) the exclusion of the testimony, report, and supplemental report of Chicago Joe's rebuttal expert John Bradley Sargent;

(3) the exclusion of Polekatz business and financial documents;

(4) the exclusion of all evidence of damages that was not disclosed by Chicago Joe's in compliance with Federal Rule of Civil Procedure 26(a)(1)(A)(iii) and 26(e)(1); and

(5) the 2018 denial of Chicago Joe's motion for leave to amend the complaint to challenge the Illinois statute.

We discuss each issue in turn.

## II. *Donahue Testimony*

### A. *District Court Decision*

To prove lost profits, Chicago Joe's offered what it called lay opinion testimony from owner David Donahue, who had experience with another adult entertainment business near Chicago called Polekatz. Chicago Joe's did not disclose Donahue as an expert witness under Federal Rule of Civil Procedure 26(a)(2). *Chicago Joe's Tea Room, LLC v. Village of Broadview*, No. 07-cv-2680, ECF 963, at *3 (N.D. Ill. Dec. 9, 2021). The district court held that under Federal Rule of Evidence 701, Donahue's lay opinion testimony had to be limited to opinions based on his own personal knowledge, as opposed to specialized knowledge or expertise under Rule 702. *Id.* at *3–4.

Chicago Joe's argued to the district court that Donahue's lay opinions were based on his involvement with Polekatz, where he worked for not quite two years from 2005 to 2007. *Id.* at *4. During that time, Donahue had daily access to Polekatz financial and operational documents, which he

claimed formed the basis of his lost-profits estimates for Chicago Joe's. *Id.* at *4–7. The question is whether his opinions were proper as lay opinions or required expertise and timely disclosures of expert opinions.

The district court found that Donahue's calculations of Chicago Joe's lost profits would go beyond his personal knowledge of Polekatz's operations. *Id.* at *6–8. His calculations relied on a series of adjustments and inferences based on differences between Polekatz and Chicago Joe's plans, as well as his specialized knowledge of the impact these differences would have had on Chicago Joe's revenues. *Id.* at *5–7. Donahue's "'economic analysis' of a business that never opened require[d] specialized knowledge well beyond the scope of Donahue's particularized knowledge of Polekatz and, thus, falls within the realm of expert opinion testimony." *Id.* at *7. Accordingly, the district court held that Donahue's testimony and supporting documents would not be admissible under Rule 701. *Id.* at *8. The district court also found that Donahue's testimony should be excluded as too speculative under the "new business rule" in Illinois law. *Id.*

On appeal, Chicago Joe's argues that the district court erred in excluding the testimony under both Rule 701 and the Illinois new business rule. The parties disagree on the applicable standard of review. Chicago Joe's argues that the district court made a legal determination that we should review de novo. The Village argues the district court's order should be reviewed for an abuse of discretion because it was a decision on evidence admissibility under Rule 701. We first address the appropriate standard of review and then turn to the merits.

B.  *Standard of Review*

We review decisions to admit or exclude lay opinion testimony under Rule 701 for an abuse of discretion. *United States v. Parkhurst*, 865 F.3d 509, 514 (7th Cir. 2017). By contrast, we review de novo whether a court applied the Rule 702 framework properly but more specific decisions to admit or exclude expert testimony—once properly classified as such—for an abuse of discretion. *Id.* Here, the district court found that Donahue's proffered lay opinion testimony on lost profits was not admissible under Rule 701. *Chicago Joe's*, ECF 963, at *8.

The line between expert and lay testimony is not always sharp. See, e.g., *Patterson v. Baker*, 990 F.3d 1082, 1085 (7th Cir. 2021). We often address this boundary with testimony from law enforcement officers, who regularly offer dual-role testimony as both lay and expert witnesses in the same trial. See *Parkhurst*, 865 F.3d at 518. The Federal Rules of Evidence provide district judges leeway in navigating the line between Rules 701 and 702 by focusing on the nature of the testimony itself. See Fed. R. Evid. 701 advisory committee's note to 2000 amendment; see also *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1176 (3d Cir. 1993) (district courts are given "broad discretion … concerning the admission or exclusion of testimony"). Where the dividing line is not sharp, deference to the district court's determination is appropriate. We review the decision to exclude Donahue's testimony for an abuse of discretion.

C.  *Rule 701 and Lost Profits*

Under Rule 701, lay opinions must be (a) rationally based on the perception of the witness, (b) helpful to a clear

understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. The final requirement is designed "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. District courts also should not allow the important disclosure and discovery requirements for expert opinions in Rule 26(a)(2), (b)(4), and (e)(2) to be evaded by that same tactic.

Lay opinion testimony on lost profits "is allowed in limited circumstances where the witness bases his opinion on particularized knowledge he possesses due to his position within the company." *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009), citing Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Thus, the owner of an established business with a documented history of profits may testify to his expectation of continued or expanded profits when that opinion is based on his knowledge of and participation in the day-to-day affairs of his business. *Id.* at 862.

Chicago Joe's seeks to fit Donahue's opinions into that description. They did not fit. The district court acted well within its discretion in finding that Donahue's testimony constituted an economic analysis that exceeded the scope of his personal knowledge that might have been permitted under Rule 701. First, the district court's conclusions are clearly supported by the extensive differences between the planned Chicago Joe's and the actual Polekatz businesses. Second, Donahue lacked personal knowledge to sustain key aspects of his testimony. Because his involvement in Polekatz's day-to-day operations

ended in 2007, any information on its operations after that
date was outside his personal knowledge.

### 1. *Differences Between Chicago Joe's and Polekatz*

Donahue's calculations do not represent an owner's ex-
pectation of continued or expanded profits at an established
business. Cf. *Von der Ruhr*, 570 F.3d at 862. His efforts to pro-
ject Chicago Joe's likely profits based on Polekatz's finances
required expert-like analysis and adjustments. Donahue him-
self testified in a deposition: "This is not Polekatz's budget …
It's not a comparison." ECF 1061-7 at 199. Donahue went fur-
ther, admitting, "No single number on this [spread]sheet …
would match up the exact number on any Polekatz historical
sales report because these are estimates for a different busi-
ness at a different location." *Id.* at 157. The district court did
not abuse its discretion in taking Donahue at his word.

The spreadsheet that formed the basis of Donahue's testi-
mony was not created to calculate lost profits for this litiga-
tion. Instead, Donahue drafted it in February 2007 "[t]o un-
derstand exactly what [Donahue] thought [Chicago Joe's]
would earn by creating an expenditure sheet and a revenue
sheet so [Donahue] could determine what the net profit might
be." *Id.* at 275.

The method used by Donahue in his calculations is not ap-
parent from the spreadsheet itself. Donahue explained in his
depositions that the calculations were based on: (1) his gen-
eral recollection of documents he viewed while working at
Polekatz for not quite two years (ECF 1061-7 at 55–58, 138, 160,
167, 194); (2) his general knowledge of the industry (*id.* at 132,
234, 242–43); and (3) his aspirations for a hypothetical busi-
ness, Chicago Joe's.

This is a far cry from Chicago Joe's portrayal of Donahue's lost-profits testimony as just "hard numbers taken directly from Polekatz documents," combined with "simple logic" that Chicago Joe's would earn more profit due to its more desirable location. Donahue made many adjustments in his calculations based on planned differences between Chicago Joe's and Polekatz. These included: a $20 entry fee as opposed to Polekatz's $10 fee (ECF 1061-7 at 135); using an entirely new rate scheme for patron access to VIP spaces (*id.* at 129–30); running a high-end steakhouse as opposed to providing only pub fare (*id.* at 65); charging more for parking (*id.* at 141–42); running valet directly as opposed to through a contractor (*id.* at 67, 142–44, 209); charging a different contractor fee (*id.* at 119–22); operating for different hours (*id.* at 216); creating new employee positions (*id.* at 214–16, 220); operating in a different geographic market (*id.* at 114, 157, 225), and owning its own building as opposed to leasing (*id.* at 73–74, 237–38).

Chicago Joe's calls all these differences "adjustments" and "straightforward calculations and comparisons." But Donahue's "straightforward calculations" were built upon numerous assumptions and inferences about the nature of the market for adult entertainment businesses and where Chicago Joe's would fit in that market. For example, the difference between a $20 admission fee versus Polekatz's $10 fee is not just a matter of multiplying by two. Rather, that calculation is based on non-obvious assumptions about how potential customers would respond to a doubled price at a different business in a different location.

Lay opinions offered under Rule 701 must be based on a witness's own perception and the reasoning process of an average person in everyday life, as opposed to specialized

training or experience. See *United States v. Fenzl*, 670 F.3d 778, 782 (7th Cir. 2012). Regardless of the validity of Donahue's assumptions about price-elasticity of demand, his estimate was not based on only the type of knowledge a layperson would have. It required specialized knowledge excluded from Rule 701 testimony and should have been subject to the discovery rules and gatekeeping that apply to expert opinions.

The same problem applies to numerous other adjustments Donahue made to account for the differences between Polekatz and Chicago Joe's. See *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) (lay witnesses cannot estimate lost profits when "claimed losses depend on the inferences to be drawn from the raw data, rather than these data … themselves"); see also *BRC Rubber & Plastics, Inc. v. Continental Carbon Co.*, No. 1:11-cv-190, 2014 WL 554565, at *4 (N.D. Ind. Feb. 11, 2014) ("Where, however, lay witnesses seek to go beyond the existing business and opine upon future sales, they are no longer supplying particularized knowledge derived from their positions in the business," but rather are "engaging in an economic analysis." (citation omitted)).

The many differences between Chicago Joe's and Polekatz, combined with the hidden assumptions Donahue used in his lost-profits estimates, support the district court's finding that his estimates did not qualify as lay opinion testimony under Rule 701.

2. *Information Outside Donahue's Personal Knowledge*

Chicago Joe's asserts that in all three of Donahue's deposition sessions, "there is not a single instance in which Donahue testified he was dependent on something he 'was

told' or 'had read' from another source outside of his personal knowledge." Appellants' Br. at 24. But Donahue admitted he was no longer involved in the day-to-day operations of Polekatz after April or May 2007. ECF 1061-7 at 57–58; 167. Despite this, his lost-profit projections continue out past that date at a constant amount per year until 2020. *Id.* at 271–73; ECF 1058-10.

When asked how he estimated that Chicago Joe's revenue would have stayed the same year-over-year despite, for example, a sharp financial downturn in 2008, Donahue explained, "it's my understanding that the revenue [and] expenditures of Polekatz have stayed consistent despite the downturn in the economy." ECF 1061-7 at 272. When pressed on where Donahue learned this information about Polekatz's revenue, he said he would speak with a Polekatz consultant, a Mr. Quaranta, a few times a week and would sometimes discuss the financial status of Polekatz. *Id.* at 273–74.

In other words, the information Donahue was told by Mr. Quaranta, not Donahue's personal knowledge, is the foundation for his opinion that Chicago Joe's revenue would have remained consistent even through a global financial crisis. That fact takes Donahue's lost-profits testimony further outside his personal knowledge and supports the district court's decision not to admit it as lay opinion testimony under Rule 701.

Because Donahue was no longer involved in the day-to-day operations of Polekatz after 2007, he did not have access to the financial and business documents that he claimed formed the basis of his calculations while discovery was open in this case. Instead, the Village and Chicago Joe's had to subpoena Polekatz's financial records. After drawn-out litigation,

Polekatz eventually produced the documents, including post-2007 financial records (when Donahue no longer worked for Polekatz). Any new materials that Donahue had not originally seen in the not quite two years he did the books at Polekatz, which ended by mid-2007, were outside his personal knowledge.

Donahue's lost-profits calculations for Chicago Joe's began partway through 2007, after he lost personal knowledge of Polekatz's current finances. ECF 1058-10 at 1. Because of this, his calculations were not admissible lay opinions. See *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion S.A. v. Titan Int'l, Inc.*, 533 F.3d 555, 560–61 (7th Cir. 2008) (witness's opinions were not admissible as lay opinions when they were based on events after he lost ownership interest in company); see also *Von der Ruhr*, 570 F.3d at 862 ("In the realm of lost profits, lay opinion testimony is allowed in limited circumstances where the witness bases his opinion on particularized knowledge he possesses *due to his position within the company*." (emphasis added)).

D. *Distinguishing Lightning Lube*

Chicago Joe's relies heavily on *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993), which was discussed in the Advisory Committee Notes to Rule 701. While the Third Circuit in *Lightning Lube* affirmed admission of a lay opinion about expected lost profits, *id.* at 1175–76, Chicago Joe's reliance on this decision is not persuasive.

Lightning Lube was a quick-lube franchisor. As a part of its franchise agreements, the company provided oil, equipment, and other services to its franchisees. Defendant Witco supplied oil and equipment to Lightning Lube and its

franchisees. After the relationship soured, Lightning Lube sued Witco for compensatory damages under a tortious interference theory. The district court held that the owner of Lightning Lube could not testify as an expert but could offer a lay opinion about future profits lost as a result of Witco's alleged misconduct. *Id.* at 1174–75. Specifically, the Lightning Lube owner could base his opinions on Lightning Lube's past results with existing franchisees and could extrapolate from that experience to future franchisees. As noted, the Third Circuit affirmed this decision.

The critical difference here is that Lightning Lube had already been operating for several years and had existing franchisees it used to estimate future lost profits. The lay witness in *Lightning Lube* based his lost-profits calculations exclusively on the time period in which he owned and operated the company. Therefore, the court concluded, the owner could properly base his lost-profits opinions on his knowledge obtained in day-to-day management of the company. *Id.* at 1175. Donahue simply cannot offer a similar personal foundation for his opinions. He was drawing instead on more general expertise that called for disclosure and qualification as an expert, which Chicago Joe's did not do.

Moreover, recall that we review for abuse of discretion. In *Lightning Lube*, the appellate court reviewed a district court's decision to allow lay opinion testimony. 4 F.3d at 1176. Here, we review the district court's decision to exclude testimony. *Lightning Lube* did not hold that the district court would have abused its discretion by excluding the lay opinions offered in the case.

For all these reasons, the district court did not abuse its discretion when it found that Donahue's lost-profits testimony would not be admitted under Rule 701.

E.  *The Illinois New Business Rule*

The parties also disagree on whether Donahue's testimony is allowable under the Illinois new business rule. See generally *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 264 Ill. Dec. 283, 770 N.E.2d 177 (2002).[2] In Illinois, a plaintiff pursuing damages for future lost profits must establish those damages with "reasonable certainty." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 305 Ill. Dec. 584, 856 N.E.2d 389, 406–407 (2006), quoting *Barnett v. Caldwell Furniture Co.*, 277 Ill. 286, 115 N.E. 389, 390 (1917). The plaintiff must offer competent evidence that tends to establish the lost profits with a fair degree of probability. *Tri-G*, 856 N.E.2d at 407. Generally, such evidence involves past profits in an established business. *Id.*

When the evidence involves expected profits in a new business, there is a concern about conjecture and speculation because the business has yet to earn any actual profits. *Id.*; *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 113 Ill. Dec. 252, 515 N.E.2d 61, 66 (1987) ("recovery of

---

[2] We need not decide here whether Chicago Joe's forfeited reliance on this theory. We also recognize that this issue could raise an *Erie Railroad* question: does Federal Rule of Evidence 701 or the Illinois new business rule control in this federal-question case brought under 42 U.S.C. § 1983? See generally *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). We do not address this question here. Both sides told us at oral argument that they would not be making any *Erie* arguments.

lost profits cannot be based upon conjecture or sheer specula-
tion").

When a plaintiff does not have a track record of actual
profits, Illinois courts have been skeptical about claims for lost
future profits. E.g., *SK Hand Tool Corp. v. Dresser Industries,
Inc.*, 284 Ill. App. 3d 417, 219 Ill. Dec. 833, 672 N.E.2d 341, 348
(Ill. App. 1996) ("a business which has not been profitable
generally will be unable to provide competent proof by which
the profits can be estimated with reasonable certainty"); see
also *TAS Distributing Co., Inc. v. Cummins Engine Co.*, 491 F.3d
625, 633 (7th Cir. 2007) (discussing general rule in Illinois that
"expected profits of a new commercial business are consid-
ered too uncertain, specific and remote to permit recovery").

Experts may not guess the amount of potential lost profits
where there is no historical data to demonstrate the likelihood
of those profits. *Meriturn Partners, LLC v. Banner and Witcoff,
Ltd.*, 2015 IL App (1st) 131883, 391 Ill. Dec. 775, 31 N.E.3d 451,
459 (Ill. App. 2015); *SK Hand Tool*, 672 N.E.2d at 347 ("Illinois
courts have long rejected the use of speculative, inaccurate or
false projections of income in the valuation of a business").
Still, as Chicago Joe's points out, Illinois does not apply an
"inviolate rule that a new business can *never* prove lost prof-
its." *Tri-G*, 856 N.E.2d at 407 (emphasis in original).

For example, in *Tri-G*, the construction company plain-
tiff's lost-profits claim was supported by testimony from the
principal of another construction company who had spent
years in the same business and built comparable houses for
comparable prices in the same subdivision. 856 N.E.2d at 407.

Similarly, in *Malatesta v. Leichter*, 186 Ill. App. 3d 602, 134
Ill. Dec. 422, 542 N.E.2d 768 (1989), a plaintiff who purchased

a car dealership supported his lost-profits claim with evidence of profits from the dealership's prior owners who had operated the same established business at the same location for the same period for which plaintiff sought damages. 542 N.E.2d at 781–82.

Additionally, in *Fishman v. Estate of Wirtz*, 807 F.2d 520 (7th Cir. 1986), we applied Illinois law and held that evidence of a professional basketball franchise's past profits was "an exceptionally helpful guide" in calculating the damages for a company that tried unsuccessfully to buy the franchise. *Id.* at 551–52.

The cases described above differ from this one because they featured "evidence of revenues of a similar product or a similar business in a similar market." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, 465 Ill. Dec. 666, 215 N.E.3d 871, 880 (2022). As noted in *Malatesta*, these cases hold that "evidence of the profits of a person other than plaintiff, who operated the same established business at the identical location for the period of time which plaintiff seeks damages, is not of such a speculative nature to require a finding that plaintiff's lost profits may not be proved to a reasonable certainty." 542 N.E.2d at 782.

As Donahue himself testified, however, Chicago Joe's would have been a different business in a different location from Polekatz. ECF 1061-7 at 157. While he may have started his calculations by using some Polekatz revenue figures, he made numerous adjustments to his calculations to account for differences between the two businesses. Notably, Donahue factored into his calculations that Chicago Joe's would be operating in a different geographic market. See *id.* at 260

(Donahue explaining that Chicago Joe's and Polekatz would not be competitors because they would be in different locations).

The differences between Chicago Joe's and Polekatz—different businesses, in different locations, operating during different time periods—show that the district court did not abuse its discretion by excluding Donahue's estimates of lost profits as too speculative, especially when offered as lay opinions.[3]

III. *Sargent Expert Testimony and Reports*

Chicago Joe's choice not to designate an expert witness for damages resulted in an unusual question about the scope of rebuttal testimony. To respond to Donahue's lay opinions on damages, the Village designated Dr. Gary Skoog as an expert witness. Chicago Joe's then designated John Bradley Sargent as an expert rebuttal witness on damages to respond to the Village's expert. After the district court excluded Donahue's damages opinions, the Village made clear that it would not need to call Dr. Skoog. That choice removed the grounds for offering rebuttal testimony from Sargent—there would be nothing to rebut. The district court therefore granted the

---

[3] The district court, during a May 2022 hearing, held that it would be impermissible under Rule 701 and Rule 26 for Donahue to testify as either a lay or expert witness about how long it would have taken to construct Chicago Joe's based upon how long it took Polekatz to open. ECF 986 at 39–40. For many of the same reasons discussed above regarding the inadmissibility of Donahue's lay testimony on damages, we affirm the district court's holding. We also affirm the district court's reasoning that Donahue could not testify as an expert witness on these matters because he was never disclosed as an expert witness under Rule 26. See Sections III, IV.B, and V.A–V.B, below, on discovery sanctions.

Village's motion in limine excluding any testimony from Sargent. As a separate ground for excluding Sargent's opinions, the district court found that he was acting essentially as a ventriloquist's dummy for Donahue's supposedly "lay" opinions.

The choice to exclude Sargent's supposedly "rebuttal" opinions was well within the district court's discretion in managing discovery and enforcing its case-management deadlines under Rules 26 and 37. See *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017) (courts review discovery sanctions for an abuse of discretion). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (internal quotations omitted). "Testimony offered only as additional support to an argument made in a case in chief, if not offered to contradict, impeach or defuse the impact of the evidence offered by an adverse party, is improper on rebuttal." *Id.* (internal quotations omitted).

Chicago Joe's also wanted to rely on a supposedly "supplemental" report from Sargent submitted in 2021, with new calculations that Sargent claimed as his own. His 2021 report included projected lost profits between $15 million and $35 million for Chicago Joe's, a business that never opened. Discovery closed in 2015. The district court had ample discretion to treat this supposedly "supplemental" report as far too late for orderly management of the case and preparation for trial.

Rule 26(e) imposes a duty on parties to supplement discovery responses. The rule is "intended to ensure prompt disclosure of new information, not to allow parties to spring late surprises on their opponents under the guise of a

'supplement' to earlier disclosures." *Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929, 935–36 (S.D. Ind. 2009), citing among other cases *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) (affirming exclusion of late report presented as supplement: "The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline."), and *Solaia Technology LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005), citing in turn *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C. 2003) (striking late-filed report styled as a "supplemental opinion"); accord, *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (striking "supplemental" report with opinions broader, deeper, and different than those provided in original timely report). "In other words, the *duty* to supplement cannot be transformed into a *right* to ambush just before trial." *Barlow*, 595 F. Supp. 2d at 936 (emphasis in original). Tolerating such tactics would serve only to add to the length, complexity, and expense of litigation.

Under Rule 37, the sanction for failure to disclose is automatic and mandatory unless the sanctioned party can show its violation was either justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Chicago Joe's did not disclose Sargent's "supplemental" report until almost six years after discovery had closed. It could not show that this violation was justified or harmless. The district court did not abuse its discretion by excluding Sargent's 2021 "supplemental" report.

IV. *Polekatz Business and Financial Documents*

   A.  *Subpoenaed Polekatz Documents Supporting Donahue Calculations*

In response to a motion in limine from the Village, the district court also excluded a series of documents that were obtained from Polekatz by subpoena. (Polekatz was not eager to share its financial records with the parties to this lawsuit.) The documents were delivered to Chicago Joe's in September 2019 and provided to the Village in March 2020. Three documents were Polekatz financial records, including: (1) Polekatz point-of-sale records from 2011 to 2019; (2) Polekatz revenue records from 2008 to 2018; and (3) a document vouching for the authenticity of these records. ECF 1059-1, 1059-3, and 1059-7. Because these documents were meant to support Donahue's calculations, the district court excluded them for lacking relevance once Donahue's testimony was excluded. That decision was also not an abuse of discretion.

   B.  *Failure to Disclose Under Federal Rule of Civil Procedure 26*

Another set of documents had never been disclosed by Chicago Joe's under Rule 26(a) or 26(e) before they were provided to the Village on January 8, 2021. These Polekatz records included: (1) construction records; (2) construction plans; (3) advertising materials; and (4) lease agreements. ECF 1059-4, 1072-7, 1072-8, and 1059-8. The district court excluded these documents under Rule 37, explaining that Chicago Joe's conceded it could have produced these documents before the close of discovery in 2015. Chicago Joe's explained that it intended to introduce the documents to prove that Chicago

Joe's could have opened before August 2007, when the amended Illinois statute took effect.

Again, we review discovery sanctions for an abuse of discretion, looking at whether the failure to disclose was justified or harmless and therefore did not warrant the mandatory exclusion penalty in Rule 37(c)(1). *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). The documents at issue were all created before the 2015 discovery cut-off. Chicago Joe's offered no explanation for its failure to disclose the documents. Because the documents were turned over long after discovery closed, the Village also had not had an opportunity to contest the evidence, leading to prejudice.

Chicago Joe's suggested any prejudice could have been cured by reopening discovery. That might have been an option, but it still would have imposed more delay and expense on the Village. When a party like Chicago Joe's has failed to meet its discovery obligations on numerous occasions, it has no right to insist that the district court bail it out. The district court did not abuse its discretion by excluding the various Polekatz documents.[4]

V.  *August 19, 2022 Order Granting Village's Motions in Limine*

Two days before the then-scheduled June 6, 2022 trial date, the Village filed four additional motions in limine. ECF 990–993. In those motions, the Village moved to exclude evidence

---

[4] ECF 1072-7 was produced by the Village during discovery in 2010. See ECF 1007-1. That document contained Polekatz construction plans. The document was not itself the subject of a discovery disclosure failure, but it became irrelevant after the district court excluded Donahue's late-disclosed testimony about construction timelines. That document was also appropriately excluded.

of Chicago Joe's claimed millions of dollars in "obligation damages" that were never disclosed under Rule 26. ECF 990. The district court postponed the trial and ordered a full round of briefing on the motions.[5]

Chicago Joe's objected to the motions as untimely and prejudicial. Judge Lee was not happy about the Village's timing, but he noted pragmatically that the Village would have been able to raise the same evidentiary issues during trial. Judge Lee ultimately addressed the merits and granted the Village's motions on August 19, 2022. His order barred Chicago Joe's from introducing any damages evidence that was not properly disclosed under Rule 26. Judge Lee wrote: "Defendant (and, to a significant extent, the Court) has remained in the dark concerning exactly how much Plaintiffs are seeking in damages or the factual grounds of those damages," ECF 1018 at 5, and he explained that conclusion in detail. The effect of this order was to limit damages to out-of-pocket expenses and costs incurred by Chicago Joe's prior to August 2007. *Id.* at 8.

Rule 26 requires a party to disclose at the outset of a case "a computation of each category of damages claimed," and to "make available … the documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of the injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). As the case progresses, a party also "must supplement or correct [this] disclosure … in a

---

[5] The other motions in limine sought to exclude additional trial exhibits: (1) under Rule 26, ECF 993; (2) for a lack of relevance after the exclusion of Donahue's testimony, ECF 992; and (3) for violation of the court's directive that new liabilities and expenses incurred after August 16, 2007 were not recoverable, rendering such evidence irrelevant, ECF 991.

timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1), (e)(1)(A).

Chicago Joe's had submitted its initial Rule 26 disclosure on December 7, 2012 and had not updated it in the intervening decade. Regarding damages, the 2012 disclosure said in its entirety: "Subject to further investigation and expert testimony, the following information is available for review and copying" at the offices of its law firm. ECF 990-1 at 4. It then listed only two sources: (1) Polekatz Gentleman's Club LLC Historical Sales Report run 2/23/07 at 1:33 pm; and (2) Chicago Joe's Tea Room Expenditure/Debt Table. *Id.* That was it.

The district court found that this meager disclosure violated Rule 26 by failing to provide a top-line computation of damages or any identification of damages categories. Further, because Chicago Joe's never updated this initial disclosure, the district court concluded that Chicago Joe's had also violated the Rule 26(e) duty to supplement disclosures as the case proceeded.

A. *Discovery Sanctions for Failure to Disclose Damage Calculations*

The district court considered whether Chicago Joe's had shown the violations were justified or harmless. Chicago Joe's argues that the violations were harmless because it produced the relevant documents in discovery and the Village was able to take Donahue's deposition several times. The district court soundly rejected these arguments.

Rule 26 places the onus on a plaintiff to provide (1) a top-line computation of its claimed damages; and (2) specific categories of damages. Chicago Joe's theory seeks to turn its "duty to supplement [its] initial damages disclosures into an opportunity and even a right to hold back [its] real damages theories and computations until nearly the eve of trial." *Barlow v. General Motors Corp.*, 595 F. Supp. 2d at 935 (excluding damages theories and evidence based on repeated failures to make timely disclosures). That is not a sound use of the rule.

Chicago Joe's contends it could satisfy its duty to disclose damages by producing quantities of financial documents and then letting the Village take depositions in which it could try to piece together a damages theory from those fragments. That is not correct. See *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (Rule 26 "requires more than providing—without any explanation—undifferentiated financial statements"). The purpose of mandatory disclosures is to "accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives." Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment. The rule requires all parties to disclose damages calculations "early in the case." *Id.* Sprinkling various financial documents among thousands of pages of discovery over several years is neither "early in the case" nor a "calculation," nor does it serve to "accelerate the exchange of basic information."

To support its argument that it "otherwise" made its damages calculations known to the Village, Chicago Joe's cites two cases—*Westefer v. Snyder*, 422 F.3d 570 (7th Cir. 2005), and *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725 (7th Cir. 2004).

Chicago Joe's fell far short of the plaintiffs' efforts in *Westefer* and *Gutierrez* to make its damages calculations "otherwise" known. First, neither case dealt with damages calculations. Second, both cases involved a single piece of information, as opposed to numerous discovery documents. Third, in both cases, the parties were made aware of the initially undisclosed information before the close of discovery. We discuss each case in turn.

In *Westefer*, prisoner-plaintiffs challenged their transfers to various prisons as unconstitutional. 422 F.3d at 572. In their initial answer to an interrogatory question, the prisoners did not challenge the government's stated reasons for their transfers as untruthful or fabricated but instead simply asserted the transfers were in retaliation for protected First Amendment activities. *Id.* at 581 n.15, 582.

The prisoners could not have challenged the government's asserted transfer reasons as false at the time of their interrogatory response because the government had not yet disclosed in discovery the prisoners' official placement forms containing that information. *Id.* at 581–82. Once the government was ordered to and did produce the forms, the prisoners offered affidavits asserting the information in the forms was untrue. *Id.*

We overruled the district court's exclusion of these affidavits under Rules 26 and 37, reasoning that, despite not formally revising their interrogatory response, the prisoners' affidavits put "officials on written notice that the prisoners challenged the placement forms' veracity." *Id.* at 584. There was no unfair surprise as a result of the prisoners' failure to amend their interrogatories because the affidavits were sufficient to comply with Rule 26's requirements. *Id.* Chicago Joe's

numerous financial documents and hours of deposition testimony did not provide a clear and concise damages disclosure comparable to the affidavits in *Westefer*.

*Gutierrez*, similarly, is not helpful to Chicago Joe's argument. In that case, the issue was whether one particular person had been identified as a potential witness. We agreed with the district court that a deposition of another witness had revealed before discovery closed that the person in question might have relevant information. 382 F.3d at 732–33. That situation is not comparable to Chicago Joe's repeated and consistent failures to make a timely disclosure of its damages theories and evidence in this case.

The district court did not abuse its discretion in finding Chicago Joe's disclosure failure to be a violation of Rule 26 warranting the Rule 37 exclusion sanction. On the eve of a trial where the principal issue would have been Chicago Joe's claimed lost profits, the Village still had not been provided the damages information required by Rule 26.

B. *Treatment of Timely Disclosed Documents*

Chicago Joe's also argues that the district court erred by not distinguishing between damages evidence that was untimely and damages evidence that Chicago Joe's produced before the discovery cut-off in 2015. Rule 26 requires disclosure of any documents upon which damages computations are based, but doing so does not eliminate the requirement to provide the damages computations and categories the documents support. See Fed. R. Civ. P. 26(a)(1)(A)(iii) ("disclosing party … must *also* make available … the documents or other evidentiary material … on which each computation is based" (emphasis added)).

While some documents underlying Chicago Joe's claimed damages were provided in a timely manner during discovery, the required computations were not. In addition to prohibiting a party from introducing into evidence at trial information it failed to disclose, a district court may also under Rule 37 "impose other appropriate sanctions" including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." See Fed. R. Civ. P. 37(c)(1)(C), 37(b)(2)(A)(ii); see also *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 615–16 (7th Cir. 2002) (discussing district court's authority to impose other appropriate sanctions under Rule 37, reviewed for an abuse of discretion).

For essentially the same reasons under Rule 37, the district court did not abuse its discretion in choosing also to exclude documents supporting Chicago Joe's damages calculations that were provided before the close of discovery. The Village was never provided with a computation of damages or damage categories by Chicago Joe's. Because the Village had not been given timely explanations of any theories those documents might be used to support, it would not have known what additional discovery to pursue to address the documents. For all these reasons, we affirm the district court's grant of the Village's motions in limine in its August 2022 order.[6]

---

[6] Chicago Joe's also argues that the district court abused its discretion by excluding from trial Polekatz's federal tax returns from 2007 to 2011 and related correspondence constituting ECF 1059-2. Chicago Joe's says these documents were meant to support the testimony of Donahue and Sargent regarding lost profits. Because we have already affirmed the

VI. *Denial of Leave to Amend*

Turning to the final contested issue on appeal, it bears repeating that the present action has been pending since May 11, 2007. By the time of Chicago Joe's first appeal, the parties had already gone through multiple rounds of summary judgment motions. The district court had granted summary judgment for the Village on Chicago Joe's claims for declaratory and injunctive relief but had denied summary judgment on its claim for damages. See *Chicago Joe's Tea Room, LLC v. Village of Broadview*, No. 07-cv-2680, 2016 WL 1270398, at *1 (N.D. Ill. Mar. 31, 2016). All that was left in the case was to hold a trial on Chicago Joe's damages for the constitutional violation found in the district court's September 11, 2008 order. The trial was put on hold pending Chicago Joe's first appeal.

In our June 2018 decision affirming dismissal of Chicago Joe's injunctive claims, we said that "since 2007, Chicago Joe's has been proposing to use the property in a way prohibited by an Illinois statute, yet without challenging that statute." *Chicago Joe's I*, 894 F.3d at 811. That is why we found Chicago Joe's claims for injunctive relief were moot. Even if the court had enjoined enforcement of the Village's ordinances, Chicago Joe's proposed use of the property would have been illegal under 65 Ill. Comp. Stat. Ann. 5/11-5-1.5. *Id.* at 816–17. Only after we decided that appeal did Chicago Joe's move to amend its complaint to add, eleven years after it became an issue, a challenge to the 2007 state statute.

Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely when justice so requires, but

---

exclusion of their testimony, the exclusion of the Polekatz tax returns is moot.

leave may be denied on account of undue delay, prejudice, bad faith or dilatory motives, futility, or judicial economy. See *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). We review denial of leave to amend a complaint for an abuse of discretion. *Id.*

The district court denied leave to amend, finding that Chicago Joe's had waited too long to challenge the state statute and that granting the motion would cause undue delay and prejudice to the Village. That conclusion was self-evident. It certainly was not an abuse of discretion.

Chicago Joe's argues, though, that it had no reason to challenge the statute until 2016 because up until that time the district court had ruled that Chicago Joe's had a vested property right to pursue its plans under the Village's ordinances. Compare *Chicago Joe's Tea Room, LLC v. Village of Broadview*, No. 07-cv-2680, 2008 WL 4287002, at *6 (N.D. Ill. Sept. 11, 2008) (holding that Chicago Joe's had a vested right in continuation of Village ordinance during pendency of its application), with *Chicago Joe's Tea Room, LLC*, 2016 WL 1270398, at *5–6 (holding that Chicago Joe's did *not* have a vested property right).

This theory does not show the denial of leave to amend was an abuse of discretion. The district court explained correctly that a property right under a local ordinance does not trump a conflicting state statute. And as we explained in *Chicago Joe's I*, "Illinois statutes preempt conflicting ordinances by non-home-rule municipalities" like the Village of Broadview, so any vested rights Chicago Joe's might have had under a Village ordinance could not defeat application of the Illinois statute. 894 F.3d at 816–17. Even if Chicago Joe's thought it had a vested right under the Village ordinance until 2016, it still did not have a right to open Chicago Joe's under

state law. The district court's reasoning that a decade was far too long to seek leave to amend still holds.

Finally, Chicago Joe's asserts that the prejudice to the Village would have been minimal if the district court had granted it leave to challenge the state statute because little additional discovery would have been required. This argument ignores one vital detail—the *Village* of Broadview had no power to grant Chicago Joe's relief for an unconstitutional *state* statute. Granting leave to amend would likely have brought the Illinois Attorney General into the case to defend the state statute, causing additional complications and delays in a case already more than a decade old and approaching a trial of the remaining issues. The district court did not abuse its discretion in denying leave to amend.

To sum up, early in this prolonged lawsuit, Chicago Joe's made a tactical choice to try to prove lost-profits damages through a lay witness, Donahue. It also chose to be coy about disclosing its damages theories and evidence, in violation of its discovery obligations. The judges of the district court who presided over this case over the years did not abuse their discretion in enforcing the Federal Rules of Evidence and Civil Procedure to impose consequences for those choices. The judgment of the district court is

AFFIRMED.